UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
GREEN BAY DIVISION

SENIOR OPPORTUNITY FUND
OPERATIONS - I, LLC
365 Canal Street, Suite 2260
New Orleans, LA 70130

and

OPCO THAL, LLC
365 Canal Street, Suite 2260
New Orleans, LA 70130

Case No. 22-CV-1008

Plaintiffs,

v.

ASSISTED LIVING BY
HILLCREST, LLC
1889 Commerce Drive
De Pere, WI 54115

and

AMY DOOLITTLE DORO
6402 Maple Rock Road
Reedsville, WI 54230

Defendants.

## COMPLAINT

Plaintiffs Senior Opportunity Fund Operations I, LLC ("SOFO") and OPCO THAL, LLC

("OPCO THAL") (collectively, "Plaintiffs"), by their attorneys, Reinhart Boerner Van Deuren

s.c., for their Complaint against Defendants Assisted Living by Hillcrest, LLC ("Hillcrest") and Amy Doolittle Doro ("Doro" or "Ms. Doro") (collectively, "Defendants"), allege as follows:

## THE PARTIES

1. Plaintiff Senior Opportunity Fund Operations - I, LLC ("SOFO") is a Georgia limited liability company with its principal place of business located at 365 Canal Street, Suite 2260, New Orleans, LA 70130.

2. The sole member of SOFO is SOF Angels, LLC, a Delaware limited liability company. The sole member of SOF Angels, LLC is SOF Holding Company, LLC.

3. SOF Holding Company, LLC is a Georgia limited liability company. Its members are:

  (a) Gregory J. Almquist ("Almquist");

  (b) ORLT, LLC;

  (c) 5100, LLC ("5100");

  (d) DV Angels, LLC ("DV Angels");

  (e) NNH Interests, LLC ("NNH Interests"); and

  (f) Donwill Ventures, LLC ("Donwill Ventures").

4. Almquist is an individual domiciled in and a citizen of the State of Georgia.

5. ORLT is a Louisiana limited liability company. Its members are: Don E. Chunn ("Chunn"), an individual domiciled in and a citizen of the State of Louisiana; and the FKC 2005 GST Trust No. 1 ("FKC"), a trust formed under the laws of Louisiana whose trustee is Chunn, and a citizen of the State of Louisiana.

6. 5100 is a Georgia limited liability company whose sole member is Almquist.

7. DV Angels is a Louisiana limited liability company, whose members are: Donwill Ventures; David Lukinovich, an individual domiciled in and a citizen of the State of Louisiana;

2

Charles A. Giraud ("Giraud"), an individual domiciled in and a citizen of the State of Louisiana; and Solomon's Portico, LLC ("Solomon's Portico"). Solomon's Portico is a Louisiana limited liability company, whose members are Kim K. Lukinovich, an individual domiciled in and a citizen of the State of Louisiana, and her children, also individuals domiciled in and citizens of the State of Louisiana.

8. NNH Interests is a Georgia limited liability company. Its sole member is DV Angels.

9. Donwill Ventures is Louisiana limited liability company. Its members are ORLT and WB Ventures, LLC ("WB Ventures"). WB Ventures is a Louisiana limited liability company whose sole member is W. Howard Thompson ("Thompson"), an individual domiciled in and a citizen of the State of Louisiana.

10. Thus, for diversity purposes, SOFO is a citizen of Louisiana and Georgia. *See Camico Mut. Ins. Co. v. Citizens Bank*, 474 F.3d 989, 992 (7th Cir. 2007) ("For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members.")

11. Plaintiff OPCO THAL, LLC is a Delaware limited liability company with its principal place of business located at 365 Canal Street, Suite 2260, New Orleans, LA 70130.

12. The sole member of OPCO THAL, LLC is THAL Holdings, LLC, a Wisconsin limited liability company.

13. The members of THAL Holdings, LLC are:

(a) DV Angels;

(b) Donwill Ventures;

(c) Solomon's Portico;

(d) Thompson;

(e) Giraud;

      (f)     5100;

      (g)     DV TH, LLC ("DV TH"); and

      (h)     JPC Consulting, LLC ("JPC Consulting").

14.     DV TH is a Louisiana limited liability company whose sole member is Donwill Ventures.

15.     JPC Consulting, LLC is a Louisiana limited liability company whose sole member is Jennifer P. Chunn, an individual domiciled in and a citizen of the State of Louisiana.

16.     Thus, for diversity purposes, OPCO THAL is a citizen of Louisiana and Georgia.

17.     Defendant Assisted Living by Hillcrest, LLC is a Wisconsin limited liability company with its principal place of business located at 1889 Commerce Drive, De Pere, Wisconsin 54115. Upon information and believe, the members of Hillcrest are Amy Doro and Veronica Trofka ("Trofka"), both individuals domiciled in and citizens of the State of Wisconsin.

18.     Thus, for diversity purposes, Hillcrest is a citizen of Wisconsin.

19.     Defendant Amy Doolittle Doro is a resident of the State of Wisconsin who, on information and belief, resides at 6402 Maple Rock Road Reedsville, WI 54230. Ms. Doro is the owner and operator of Assisted Living by Hillcrest, LLC.

20.     Thus, for diversity purposes, Doro is a citizen of Wisconsin.

## JURISDICTION AND VENUE

21.     This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different states in which the amount in controversy exceeds $75,000, exclusive of interests and costs.

4

22. This Court also has personal jurisdiction over Defendants pursuant to Wis. Stat. §§ 801.05(1)(c), 801.05(3), and 801.05(5)(b).

23. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because a substantial part of the events giving rise to Plaintiffs' claims occurred in this District.

## BACKGROUND

### *The Parties and Their Relationship*

24. SOFO is the operator of Caraton Commons, a senior living community offering assisted living, memory care, and respite care, with various locations in De Pere, Wisconsin and Green Bay, Wisconsin.

25. OPCO THAL is the operator of Tender Hearts Assisted Living ("Tender Hearts"). Tender Hearts is likewise a senior living and assisted living facility located in Green Bay, Wisconsin.

26. Hillcrest is engaged primarily in the business of providing health care management services at senior housing facilities. Its principal owner and Executive Director is Amy Doolittle Doro.

27. Ms. Doro separately owns and operates her own assisted living facilities with locations throughout Northeast Wisconsin.

28. In or around 2019, Plaintiffs were seeking to replace the company then-responsible for management and day-to-day oversight of the Caraton Commons assisted living facilities, with the goal of securing a trustworthy and reliable partner capable of managing the facilities and their operations, marketing the services offered at Caraton Commons with the goal of improving performance and financial returns, and, above all, ensuring that all residents were consistently provided exceptional care. Plaintiffs were introduced to Ms. Doro and,

5

following a number of meetings and initial discussions, determined to engage her and Hillcrest to provide management services at Caraton Commons.

29.     On or about January 1, 2020, SOFO and Hillcrest entered into a Management Services Agreement under which Hillcrest agreed to provide management services at Caraton Commons (hereinafter referred to as the "Caraton Commons Agreement"). A true and correct copy of the Caraton Commons Agreement is attached hereto as **Exhibit A**.

30.     In January 2021, Plaintiffs acquired Tender Hearts Assisted Living.

31.     Thereafter, Plaintiffs similarly determined to engage Ms. Doro and Hillcrest to provide management services at Tender Hearts.

32.     On or about January 14, 2021, OPCO THAL and Hillcrest entered into a Management Services Agreement under which Hillcrest agreed to provide management services at Tender Hearts (hereinafter referred to as the "Tender Hearts Agreement"). A true and correct copy of the Tender Hearts Agreement is attached hereto as **Exhibit B**.

### *The Management Agreements*

33.     Pursuant to the terms of the Caraton Commons and Tender Hearts Agreements, Hillcrest agreed to provide a broad spectrum of management services in connection with the operation of the Caraton Commons and Tender Hearts communities, including, among other responsibilities: recruiting and providing on-site, full-time managers for each of the facilities; recruiting, training and overseeing management and administration of the facilities by Owner's personnel; providing clinical consulting and assistance; overseeing all necessary processes for securing and maintaining required licenses; reviewing, developing, approving, and implementing operational policies and procedures for all aspects of the management and operation of the facilities, consistent with applicable legal requirements and industry standards; budget

6

preparation and approval; implementing financial controls and accounting procedures for maintaining proper financial records; billing and collections; and customer relations.

34.     The above management responsibilities, and Hillcrest's other duties as manager, are described in more detail in the Caraton Commons and Tender Hearts Agreements and subject to the terms set forth therein.

35.     Greg Almquist was SOFO's primary designated representative under the terms of the Caraton Commons Agreement.  Keith Chunn and Chris Oswald have also served as the designated representative at certain times.

36.     Greg Almquist was OPCO THAL's primary designated representative under the terms of the Tender Hearts Agreement.  Keith Chunn and Chris Oswald have also served as the designated representative at certain times.

37.     Under the terms of both the Caraton Commons and Tender Hearts Agreements, Hillcrest was responsible for certain personnel services including, but not limited to, overseeing employee recruitment, retention, and salary administration.  Salaries for, and management, retention and release of management level staff are subject to approval by SOFO and OPCO THAL.

38.     Under the terms of both the Caraton Commons and Tender Hearts Agreements, Hillcrest was responsible for overseeing the management of resident security deposits.

39.     Under the terms of both the Caraton Commons and Tender Hearts Agreements, Hillcrest was responsible for supervising resident care and taking all necessary actions to retain current residents and to improve occupancy at Caraton Commons and Tender Hearts Assisted Living.

40.     The Caraton Commons and Tender Hearts Agreements provide that, during the term of the respective agreements, Plaintiffs will provide Hillcrest with complete access to the communities at Caraton Commons and Tender Hearts, including records and offices. In addition, nothing in either the Caraton Commons Agreement or the Tender Hearts Agreement permitted Hillcrest to restrict Plaintiffs' access to those communities.

41.     Under the terms of both the Caraton Commons and Tender Hearts Agreements, Plaintiffs were permitted to inspect the communities at Caraton Commons and/or Tender Hearts Assisted Living, including any and all books and records located at those communities pertaining to operations.

42.     Under the terms of both the Caraton Commons and Tender Hearts Agreements, Plaintiffs agreed to reimburse Hillcrest for all expenses deemed to be Plaintiffs' responsibility to the extent such expenses were incurred by Hillcrest on Plaintiffs' behalf.

43.     Under the terms of both the Caraton Commons and Tender Hearts Agreements, either party is permitted to terminate the agreement at any time without cause by giving at least sixty (60) days prior written notice to the other party.

### *Payment Terms*

44.     Under the terms of both the Caraton Commons and Tender Hearts Agreements, Hillcrest agreed to fulfill the above obligations in accordance with the terms set forth in those agreements. In exchange, Plaintiffs agreed to pay Hillcrest a management fee equal to five percent (5.0%) of actual Gross Revenues for the applicable month.

45.     In addition, Plaintiffs agreed to reimburse Hillcrest for certain "reimbursable expenses of Manager"—that is, Hillcrest's reasonable out-of-pocket expenses incurred in connection with the agreements and paid to third parties. Hillcrest was required to provide

Plaintiffs with itemized statements of such expenses, and Plaintiffs in turn agreed to remit

payment within ten (10) days of receipt of any such itemized statement provided by Hillcrest.

46.     Plaintiffs were not obligated to reimburse Hillcrest for any of Hillcrest's corporate

home office expenses incurred in connection with the agreements.

47.     The Caraton Commons and Tender Hearts Agreements provide that before

Plaintiffs are permitted to terminate the agreements, all reasonably *undisputed* amounts owed to

Hillcrest must be paid in full.

### ***Unilateral Change in Payment Structure: the "Add-On Package"***

48.     At all times relevant to this action, Hillcrest managed the operations of the

Caraton and Tender Hearts facilities from Hillcrest's corporate office in Green Bay.

49.     On information and belief, Hillcrest employs approximately 20 employees in that

office, including training, accounting, and human resources personnel.

50.     Pursuant to the Caraton Commons and Tender Hearts Agreements, Plaintiffs were

not obligated to reimburse Hillcrest for any of its "corporate home office expenses incurred in

connection with" the Agreements, except as otherwise provided under the Agreements or agreed

to by the parties.

51.     However, pursuant to Section 3.1.18 of the Agreements, to the extent Hillcrest

provided or arranged for the provision of "ancillary services not covered by" the Agreements,

including training, construction, or care-related consultants, Plaintiffs agreed to reimburse

Hillcrest "for the reasonable direct and indirect costs related to such services."

52.     Consistent with the terms of the Agreements regarding the provision of such

"ancillary services," Hillcrest occasionally provided additional assistance at the Communities

beyond the scope of specific management services otherwise required under the Agreements. Hillcrest often provided such ancillary services through its existing staff.

53. Initially, from approximately January 2020 until March 2020, Hillcrest billed Plaintiffs for any such "ancillary services" performed by Hillcrest employees on an hourly basis, consistent with the terms of the Caraton Commons Agreement.

54. In or around March 2020, however, Doro notified Plaintiffs that, rather than bill Plaintiffs for services provided by Hillcrest employees on an hourly basis, Hillcrest would be instituting a new "add-on package" for such reimbursements, under which Hillcrest would bill Plaintiffs for a proportionate share of total expenses incurred by Hillcrest in the performance of management-related services for all properties under Hillcrest's purview—including assisted living facilities owned by Doro and Trofka personally, as well as third parties unrelated to Plaintiffs.

55. Initially, the add-on package was intended to be temporary. Under the Agreements, Hillcrest was responsible for staffing the Caraton Commons and Tender Hearts facilities; however, due to difficulties fulfilling staffing needs brought on by the COVID-19 pandemic and other market factors, Hillcrest instituted the "add-on package." The parties understood it was not intended to be a permanent arrangement, and Plaintiffs never agreed to pay Hillcrest additional amounts for management services under the guise of "add-on" expenses.

56. The reimbursements Hillcrest was to seek under the newly-instituted "add-on package" would be in addition to the five percent management fee Hillcrest received under the Agreements, as well as any reimbursements under Section 9.4 of the Agreements for amounts paid to third parties (which the parties termed "Bill Back" costs).

57.     From April 2020 to approximately November 2020, Plaintiffs did not receive any invoices for any additional, ancillary services allegedly provided by Hillcrest, either under the new "add-on package" for reimbursement instituted by Hillcrest, or the previous framework for reimbursement on an hourly basis.

58.     In or around October 2020, Hillcrest discovered that, due to an apparent clerical error, no invoices had been sent to Plaintiffs.  Following the discovery of that clerical error, in or about November 2020, Hillcrest submitted to Plaintiffs various invoices for services allegedly provided by Hillcrest at the Caraton Commons facility from April through November 2020.

59.     Each of those belated invoices sought reimbursement of $24,900 for services allegedly provided by Hillcrest, on top of the numerous management-related services Hillcrest agreed to provide under the Agreement in exchange for its five percent management fee.

60.     It was only after Plaintiffs received these invoices that Plaintiffs realized that under the "add-on package" Hillcrest had unilaterally implemented, Hillcrest was billing Plaintiffs, not for the cost of ancillary services actually provided by Hillcrest, but for a share of all costs incurred by Hillcrest in the operation of its own business, including Hillcrest's payroll and other overhead, plus a markup.  This practice continued at the Tender Hearts facility.

61.      In other words, although Plaintiffs previously agreed under the Caraton Commons and Tender Hearts Agreements to pay Hillcrest a five percent fee for the management of Plaintiffs' facilities, in addition to the agreed five percent fee, Hillcrest began allocating to Caraton Commons and Tender Hearts a portion of the amounts Hillcrest paid to its own employees (*i.e.*, their salaries and other payroll expenses) and invoicing Plaintiffs for those amounts as "add-on expenses."

62.     Under this new "add-on package" unilaterally implemented by Hillcrest, Plaintiffs discovered that Hillcrest was billing Plaintiffs for a substantial share of Hillcrest's own operational expenses and overhead, seeking reimbursement from Plaintiffs for costs associated with Hillcrest employees that had no connection to the Caraton Commons and Tender Hearts facilities, performed no work under the Management Agreements, and in many cases, had never even been to the properties during the period for which Plaintiff was billed.  For instance, Hillcrest even billed Plaintiffs for a share of the amounts Doro paid to her executive assistant. Similarly, Hillcrest billed Plaintiffs for a share of the costs Hillcrest paid to various recruiters, despite the fact that Plaintiffs do not utilize and have not approved the use of recruiters at either facility.

### *The "Bill Back Package"*

63.     In addition to the five percent management fee agreed to by the parties, and the overhead expenses Hillcrest sought reimbursement for under the above-described "add-on package," Hillcrest continued seeking reimbursement for amounts paid to third parties in connection with the management of the properties, including for advertising, computer and other IT services, and hiring-relating expenses.

64.     Although Hillcrest is entitled to reimbursement of "*reasonable* out of pocket expenses" incurred in connection with the management of the properties and paid to third parties, Hillcrest routinely billed Plaintiffs for unreasonable or inflated amounts allegedly paid to third parties, often with no explanation of the reason such third-party costs were necessarily-incurred in connection with the management of the properties.

65.     For example, Hillcrest "billed back" to Plaintiffs approximately $2,000 for amounts paid to the online job-search database Indeed to list open positions at the facilities.  Upon information and belief, the actual cost to list jobs on Indeed is approximately $40.

66.     Hillcrest also "billed back" to Plaintiffs costs for advertising for the properties for advertisements that did not include Caraton Commons or Tender Hearts.  More specifically, Hillcrest regularly paid for certain print and television advertisements and "billed back" the costs of such advertisements to all of the properties Hillcrest managed, including their own properties, as shared costs.  After repeated requests by Plaintiffs, Defendants never explained how any such advertisements benefitted the Caraton Commons and Tender Hearts facilities, as opposed to the other assisted living facilities under Hillcrest's management, who were competitors of Plaintiffs.  In fact, when Plaintiffs requested copies of the advertisements, Hillcrest refused to provide them.

67.     In addition, Hillcrest also "billed back" to Plaintiffs amounts allegedly paid for rental of a maintenance truck even though Plaintiffs employ a maintenance person at the Caraton Commons and Tender Hearts communities who has his own truck.  Once again, when Plaintiffs requested further information regarding the basis for this "bill back" charge, Defendants refused to provide additional information.

### _The Disputed Invoices_

68.     From April 2020 until the Agreements were terminated in August 2022, Hillcrest continued to invoice Plaintiffs for alleged "ancillary services" supposedly provided by Defendants in connection with Hillcrest's management of the property.  However, Hillcrest did not provide Plaintiffs with any of these invoices until late 2022.  Pursuant to the revised structure for payment unilaterally implemented by Hillcrest in April 2020, Hillcrest billed for these additional amounts as part of the so-called "add-on package."

69.     But in reality, the amounts Hillcrest billed under this "add-on package" did not reflect actual ancillary expenses incurred by Hillcrest beyond the scope of its management duties under the agreements.  Rather, Hillcrest's "add-on package" invoices reflected charges for

services allegedly performed by Hillcrest employees that fell squarely within the scope of its management duties.

70.     For instance, Hillcrest billed to Plaintiffs "add-on" expenses for a pro-rata share of amounts paid, as salary, to maintenance, human resources, and recruiting personnel employed by Hillcrest.   Hillcrest was required under the Agreements to provide management services in these areas and Hillcrest failed to explain why any maintenance, human resources, or recruiting services allegedly provided by Hillcrest employees should be considered ancillary to the management services Hillcrest was otherwise required to provide in exchange for its five percent management fee.

71.     Upon receipt of these improper invoices, Plaintiffs repeatedly requested that Defendants supply additional information regarding the basis for the charges included on such invoices in an effort to substantiate the amounts demanded and determine whether the invoiced amounts actually qualified as "ancillary services" eligible for reimbursement on top of the five percent management fee Defendants already received.

72.     The terms of the Agreements expressly require Hillcrest to provide itemized statements of expenses.  Despite this, Hillcrest repeatedly refused to supply appropriate supporting information to back up its invoiced amounts, or even identify the particular tasks the Hillcrest employees were "required" to perform at the Caraton Commons or Tender Hearts properties.

73.     Hillcrest invoiced Plaintiffs for alleged ancillary costs totaling hundreds of thousands of dollars.

74.     Plaintiffs objected to Defendants' invoices on the grounds that they failed to comply with agreements, insofar as they failed to include any detail concerning the expenses,

including that the expenses were incurred by Hillcrest in connection with services provided at Caraton Commons and Tender Hearts. As a result, Plaintiffs' refused to pay the invoices, absent further information regarding the basis for the invoiced amounts.

75.     Hillcrest refused and, to date, still has not supplied any further information to substantiate the amounts invoiced to Plaintiffs as "add-on" or "ancillary" charges.

76.     Thus, all invoices remain disputed.

*__Hillcrest's Failure to Fulfill its Obligations under the Agreements__*

77.     Under the terms of the Agreements, Hillcrest was required to employ all communities' personnel to provide services in connection with the operation of the communities. In other words, the community personnel hired by Hillcrest were not to be employed for any other purpose than to operate Caraton Commons and Tender Hearts.

78.     In violation of the Agreements, Hillcrest used Plaintiffs' employees for work at facilities other than Caraton Commons and Tender Hearts, and without providing reimbursement to Plaintiffs for those employees' wages.

79.     Under the terms of the Agreements, Hillcrest was required to retain current residents and to improve occupancy at Caraton Commons and Tender Hearts.  However, on or about June 24, 2022, Plaintiffs learned that Hillcrest was transferring residents, without explanation, from Tender Hearts and Caraton Commons to other facilities owned by Ms. Doro.

80.     Thereafter, in connection with those transfers, Hillcrest submitted invoices to Plaintiffs requesting refunds for residents' rent for the benefit of Ms. Doro's other facilities.

81.     Under the terms of the Agreements, Hillcrest was required to prepare and provide to Plaintiffs a proposed budget and cash flow projections for the year, for each year and for each facility.  Hillcrest never prepared such budgets.

82.    In addition, any expenditures for equipment or for items not addressed as operational needs in the budget that exceeded $5,000.00 required the prior written approval of Plaintiffs.  Hillcrest routinely made payments in excess of $5,000.00 without Plaintiffs' approval.

83.    Hillcrest was also required to establish and implement budget financial controls and monitoring systems, as well as business office bookkeeping and accounting procedures for the preparation of financial records.  Hillcrest never implemented any financial controls or monitoring systems, nor did it establish any procedures for the preparation of financial records.

84.    Hillcrest repeatedly failed to fulfill other management responsibilities, including by among other things: failing to provide appropriate oversight at the properties; failing to disclose regulatory and/or legal issues including fines imposed on the properties by government agencies; and failing to ensure the availability of adequate supplies necessary to operate the facilities.

### *Termination of the Agreements*

85.    The Caraton Commons and Tender Hearts Agreements provide that Plaintiffs may terminate the agreements at any time without cause by giving at least sixty (60) days prior written notice to the other party.

86.    The Agreements further provide that Plaintiffs may not terminate the agreements unless all reasonably undisputed amounts owed to Hillcrest under the agreements have been paid in full.

87.    As a result of Hillcrest's conduct, in part, discussed *supra*, SOFO provided Hillcrest with a notice of termination dated July 12, 2022.  A true and correct copy of SOFO's notice of termination is attached hereto as **Exhibit C**.

88.     As of July 12, 2022, there were no outstanding undisputed amounts owed to Hillcrest outstanding over ten (10) days.

89.     In a written response dated July 18, 2022, Hillcrest asserted that SOFO's notice of termination was invalid, explaining that SOFO owes Hillcrest approximately $215,000 in undisputed management fees.  A true and correct copy of Hillcrest's response letter is attached hereto as **Exhibit D**.

90.     On August 3, 2022, and as a result of the conduct, in part, discussed *supra*, OPCO THAL provided Hillcrest with a notice of termination.  As of August 3, there were no outstanding undisputed amounts owed to Hillcrest outstanding over ten (10) days.

91.     SOFO and OPCO THAL maintain that there remain no reasonably undisputed amounts owed to Hillcrest.

92.     On or about August 8, 2022, Hillcrest provided Plaintiffs notice of purported defaults under the Caraton Commons Agreement, alleging that SOFO had failed to timely pay amounts owed under the Caraton Commons Agreement.  A true and correct copy of the Caraton Commons Default Notice is attached as **Exhibit E**.

93.     On that same date, Hillcrest also provided Plaintiffs notice of purported defaults under the Tender Hearts Agreement, alleging that OPCO THAL had failed to timely pay amounts owed under the Tender Hearts Agreement.  It also alleged that the August 3 notice of OPCO THAL was invalid because of the alleged failure to pay invoices.  A true and correct copy of the Tender Hearts Default Notice is attached as **Exhibit F**.

94.     Both the Caraton Commons and Tender Hearts Agreements required the continued management by Hillcrest during the termination period unless otherwise agreed to by the parties in writing.

95.     Since receiving the notices of termination, Hillcrest has continued to breach its management duties as required under the Caraton Commons and Tender Hearts Agreements.

96.     For instance, Hillcrest has failed to keep residency levels at the proper amounts, especially in 2022.

97.     Hillcrest also has made repeated attempts to prevent Plaintiffs and Plaintiffs' representatives from accessing software systems necessary for management of the facilities.

98.     In particular, Hillcrest has attempted to restrict access to the Lakeland web portal and ALIS web portal.  ALIS is the electronic medical record system and partial accounting system to which the Plaintiffs are contractually required to have access under the Agreements. Access to ALIS is critical to the operations at the Caraton and Tender Hearts facilities, and the continued clinical service for residents there.  Hillcrest attempted to restrict Plaintiffs' access to these critical services in advance of the transition of operational responsibility to Plaintiffs by calling the service providers and demanding that  In the leadup to the transition of operational responsibility at the facilities following the termination of the Management Agreement, Hillcrest attempted to restrict Plaintiffs' access to these critical services by calling the service providers and demanding that personnel associated with SOFO and OPCO THAL be removed from access.

99.     The Caraton Commons and Tender Hearts Agreements provide that, upon termination, Hillcrest is required to cooperate with Plaintiffs to ensure that operational responsibility for the communities is transferred as soon as practicable to Plaintiffs.

100.    As part of Hillcrest's duty to transition operational responsibility upon termination, Hillcrest is required to deliver to Plaintiffs' or their designees possession and control of all bank accounts and all rents and income of the communities and other monies of Plaintiffs

on hand or in any bank account as soon as reasonably practicable (but not later than five (5) business days after the effective date of such termination or expiration).

101.    Upon termination, Hillcrest is further required to deliver to Plaintiffs or their designees any monies owed to Plaintiffs under the Agreements but received after termination.

102.    Upon termination, Hillcrest is further required to deliver to Plaintiffs or their designees all materials and supplies used at the communities, and other property of the communities and belonging to Plaintiffs.

103.    In addition, Hillcrest's obligations under the terms of the Agreements included purchasing inventory, supplies and non-capital equipment needed to properly operate the communities.  However, upon receiving Plaintiffs' notices of termination, Hillcrest stopped purchasing supplies, including but not limited to, certain personal protective equipment such as gloves, wipes, and masks needed to properly operate the communities and care for the residents. As a result, Plaintiffs were forced to purchase these items at a drug store and deliver the items to their employees at the communities.

104.    Upon information and belief, Defendants even instructed certain employees to dispose of needed supplies and equipment, including PPE, so as to deplete the resources necessary to properly operate the facilities post-termination.

105.    Hillcrest also stopped placing necessary food orders, forcing Plaintiffs to arrange for an emergency delivery of food to the Tender Hearts facility, at significant additional expense.

106.    Hillcrest also has refused to return to Plaintiffs equipment and other property of the communities and Plaintiffs in violation of Section 7.3.3(d) of the Agreements.  Despite repeated requests by Plaintiffs, Hillcrest failed or refused to return various printers, computers and check scanners that had previously been purchased by Plaintiffs for use at the facilities.  This

refusal to return Plaintiffs' equipment, as required, impeded Plaintiffs' ability to assume operational control of the facilities and forced Plaintiffs to incur additional unexpected costs to replace the equipment.

### *Fraudulent Check Scheme*

107.    Plaintiffs are parties to Deposit Account Control Agreements ("DACA") and Deposit Account Instructions Service Agreements ("DAISA") with their lender, which restrict the use of Plaintiffs' deposit accounts and require funds to be deposited in a DACA and DAISA account for use consistent with the agreed financing restrictions.

108.    At all times relevant to this dispute, Ms. Doro and Hillcrest were aware of the restrictions imposed by the DACA and DAISA agreements.

109.    Consistent with the restrictions imposed by Plaintiffs' lender and the DACA and DAISA agreements, Plaintiffs required any amounts payable to SOFO and/or OPCO THAL be deposited into those designated accounts.  This included monthly rent and other fees owed by residents.  To that end, Plaintiffs arranged for all monthly rent and other charges to be paid via electronic ACH deposit directly into the appropriate accounts designated by SOFO and OPCO THAL.

110.    Prior to August 2022, all monthly rent payments, whether from private payors or WPS health insurance (in the case of public pay residents) were made via electronic ACH.

111.    Plaintiffs put Ms. Doro and Hillcrest on notice that the invoices were disputed both because of the above-described improprieties and because of the lack of documentary support for the invoices, and for months the parties engaged ongoing discussions regarding those disputed invoices.

112.     Rather than supply the appropriate support and back up to justify the disputed invoices and the amounts allegedly owed by Plaintiffs, as repeatedly requested by Plaintiffs and required under the Agreements, Defendants instead devised a scheme to divert expected rent payments from Plaintiffs' designated accounts to accounts controlled by Hillcrest and Doro.

113.     Due in part to these improprieties, Plaintiffs elected to terminate the Caraton Commons Agreement and the Tender Hearts Agreement.

114.     On information and belief, prior to the beginning in August when the next rent payments were due, Ms. Doro arranged for any rent payments from WPS or private pay residents to be made, not by ACH, but by paper checks delivered to Hillcrest.

115.     Plaintiffs became aware that their account preferences had been changed from ACH to paper checks only after expected August rents were not deposited in the appropriate DACA and DAISA accounts via ACH as usual.  Unaware at that time that Defendants had orchestrated those changes themselves, Plaintiffs repeatedly requested Ms. Doro and Hillcrest return the checks to Plaintiffs so that they could deposit them into the appropriate accounts and make funds available for use in operations, including, but not limited to, for payroll, loan payments, and other company expenses.  At that time, Plaintiffs were unaware that Defendants had likely orchestrated the changes intentionally as part of a scheme to secure payment of their own improper and disputed invoices.

116.     Defendants refused to return the checks, claiming instead that all amounts received had been deposited into accounts "for the benefit of" Plaintiffs in accordance with the terms of the Agreements Hillcrest had previously elected to terminate.  Defendants advised Plaintiffs that $93,861.56 had been deposited into SOFO's existing checking account for purposes of covering payroll at Caraton Commons.  Defendants also indicated that there were

insufficient funds available to cover required payroll at Tender Hearts and for other operational needs at the facilities. As a result, Defendants indicated that OPCO THAL would need to transfer an additional $53,467.74 to cover payroll at Tender Hearts.

117. Defendants did not account for the more than $300,000 in additional rent payments that Plaintiffs were due to receive at the beginning of the month, beyond the approximately $93,000 Defendants had apparently deposited in SOFO's checking account.

118. Upon further investigation, Plaintiffs discovered that Doro and Hillcrest deposited all diverted funds into a new bank accounts setup by Defendants at Capital Credit Union. Defendants set up these new bank accounts in the name of SOFO and OPCO THAL, without their knowledge or consent.

119. Defendants did so after operating without such an account for the previous two and a half years under the Agreements, and only after the dispute arose regarding the amounts improperly invoiced to Plaintiffs by Hillcrest. Upon information and belief, Doro and Hillcrest set up the new, secret bank account as part of a scheme to divert rental payments from Plaintiffs' appropriate DACA and DAISA accounts so that Doro and Hillcrest could pay their own disputed invoices, over Plaintiffs' objections.

120. On information and belief, Doro and Hillcrest misrepresented their status as authorized representative of SOFO and OPCO THAL when the accounts were opened.

121. On August 8, 2022, Doro and Hillcrest provided Plaintiffs with a notice of termination of the Caraton Commons Agreement and the Tender Hearts Agreement. The Tender Hearts notice also alleged that the prior August 3 notice was invalid because of alleged unpaid invoices.

122.    Plaintiffs later learned that, on the same day Hillcrest provided notice of termination of the Agreements, Doro and Hillcrest deposited more than $400,000 in rent checks in those newly opened accounts.

123.    Upon information and belief, while Ms. Doro issued a check payable to SOFO for the precise amount of payroll due at Caraton Commons of $93,861.56, the remaining funds were utilized by Ms. Doro to pay Hillcrest's disputed invoices, without Plaintiffs' knowledge or consent. Attached hereto as **Exhibit G** are true and correct copies of the disputed invoices provided by Defendants reflecting payments to Hillcrest totaling $332,965.25.

124.    Doro and Hillcrest utilized the vast majority of rent payments that had been intended for Plaintiffs, but diverted by Defendants, to pay Hillcrest's own disputed invoices, including the various new invoices issued by Hillcrest the same day seeking payment for amounts already paid by Plaintiffs.  As a result, Plaintiffs were left with minimal funds to pay for ongoing operations at the facilities, forcing Plaintiffs to deposit an additional $190,000 to cover required payroll and loan payments, as well as other ongoing expenses for the management and operation of the facilities.

125.    Plaintiffs have no access to the accounts Ms. Doro and Hillcrest opened in SOFO's and OPCO THAL's names at Capital Credit Union including any funds that remain in that account.

## COUNT I
## BREACH OF CONTRACT
### (as against Defendant Hillcrest)

126.    Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 125 as though fully set forth herein.

127. Plaintiffs entered into a valid and enforceable contract with Hillcrest under which Hillcrest agreed to provide management services to certain senior housing communities owned and operated by Plaintiffs.

128. Hillcrest is in material breach of the Caraton Commons Agreement and the Tender Hearts Agreement by way of the conduct described herein.

129. As a direct and proximate result of Hillcrest's conduct, Plaintiffs have been damaged in an amount to be determined at trial.

**COUNT II**
**BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING**
**(as against Defendant Hillcrest)**

130. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 129 as though fully set forth herein.

131. Plaintiffs entered into a valid and enforceable contract with Hillcrest under which Hillcrest agreed to provide management services to certain senior housing communities owned and operated by SOFO and OPCO THAL.

132. In every contract, including the Caraton Commons and Tender Hearts Agreements involved in this matter, by operation of law, is an implied covenant of good faith and fair dealing, which requires the parties to the agreement to act in good faith and in accordance with reasonable standards of fair dealing.

133. The implied covenant of good faith and fair dealing also prohibits either party from engaging in any conduct or doing anything that deprives the other party of the fruits of the agreement or benefit of the bargain.

134. Hillcrest's actions described herein breached Hillcrest's duty of good faith and fair dealing owed to Plaintiffs under the Caraton Commons and Tender Hearts Agreements.

135.     Hillcrest's violations of the covenant of good faith and fair dealing has resulted in Plaintiffs no longer receiving the benefit of their bargain.

136.     As a direct, proximate, and foreseeable result of Hillcrest's material breaches of its obligations under the terms of the Caraton Commons and Tender Hearts Agreements and its covenants of good faith and fair dealing, Plaintiffs have incurred and stand to incur substantial damages in an amount to be determined at trial.

**COUNT III**
**CIVIL THEFT CONTRARY TO WIS. STAT. § 895.446**
**(as against all Defendants)**

137.     Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 136 as though fully set forth herein.

138.     Defendants intentionally obtained and retained possession of Plaintiffs' funds through fraud and misrepresentations.

139.     Specifically, Defendants set up new bank accounts with Capital Credit Union in in the name of SOFO and OPCO THAL without Plaintiffs' knowledge or approval.

140.     On information and belief, Defendants misrepresented their status as authorized representative of SOFO and OPCO THAL when the accounts were opened.

141.     Defendants deposited more than $400,000 in rent checks owed to Plaintiffs in those newly opened accounts.

142.     Upon information and belief, while Ms. Doro issued a check payable to SOFO for the precise amount of payroll due at Caraton Commons of $93,861.56, the remaining funds were utilized by Ms. Doro to pay Hillcrest's disputed invoices, without Plaintiffs' knowledge or consent.

143.    Plaintiffs do not have access to the Capital Credit Union accounts, or the funds contained therein.

144.    Plaintiffs did not consent to Defendants' retention and use of Plaintiffs' funds.

145.    Defendants knew that Plaintiffs did not consent to their retention and use of Plaintiffs' funds.

146.    Defendants intended to deprive Plaintiffs permanently of the possession of the funds.

147.    Defendants' actions constitute a violation of Wis. Stat. § 943.20(1)(a) and (b).

148.    Pursuant to Wis. Stat. § 895.446, Plaintiffs are entitled to treble damages and their reasonable attorneys' fees resulting from Defendant Doro's unlawful conduct described above.

**COUNT IV**
**CONVERSION**
**(as against all Defendants)**

149.    Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 148 as though fully set forth herein.

150.    Defendants set up new bank accounts with Capital Credit Union in in the name of SOFO and OPCO THAL without Plaintiffs' knowledge or approval.

151.    On information and belief, Defendants misrepresented their status as authorized representative of SOFO and OPCO THAL when the accounts were opened.

152.    Defendants deposited more than $400,000 in rent checks owed to Plaintiffs in those newly opened accounts.

153.    Upon information and belief, while Ms. Doro issued a check payable to SOFO for the precise amount of payroll due at Caraton Commons of $93,861.56, the remaining funds were

utilized by Ms. Doro to pay Hillcrest's disputed invoices, without Plaintiffs' knowledge or consent.

154. Plaintiffs do not have access to the Capital Credit Union accounts, or the funds contained therein.

155. By depositing funds owed to Plaintiffs into a separate bank account of which Plaintiffs do not have control or access, and by using the funds owed to Plaintiffs to pay themselves, Defendants took Plaintiffs' assets and converted them for their own use.

156. By engaging in the acts and omissions described herein, Defendants have wrongfully and illegally converted funds and assets of Plaintiffs for their own possession and use.

157. Plaintiffs have suffered damages as a result.

158. Defendants acted with an intentional disregard of Plaintiffs' rights, entitling Plaintiffs to punitive damages.

**COUNT V**
**MONEY HAD AND RECEIVED**
**(as against all Defendants)**

159. Plaintiffs reallege and incorporate by reference the allegations contained in Paragraphs 1 through 158 as though fully set forth herein.

160. Through the conduct described herein, Defendants received funds that are rightfully owed to Plaintiffs.

161. Defendants retained and unjustly enriched themselves with funds to which Plaintiffs are entitled in good conscience and equity.

162. Plaintiffs demanded repayment of the funds from Defendants.

163. Defendants have refused to repay Plaintiffs.

164.     Plaintiffs demand judgment in the amount of the funds wrongfully retained by Defendants, totaling $332,965.25.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request the entry of judgment in their favor and against Hillcrest as follows:

A.   An award of actual and compensatory damages in an amount to be determined at trial;

B.   An award of costs, including attorneys' fees that are reasonably incurred;

C.   An award of punitive damages to the extent permitted by applicable law;

D.   Treble damages pursuant to Wis. Stat. § 895.446; and

E.   Such other and further relied as this Court deems proper.

## **JURY DEMAND**

Plaintiffs demand a trial by jury on all issues triable by a jury.

Dated this 1st day of September, 2022.

Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202-3186
Telephone: 414-298-1000
Facsimile: 414-298-8097

Mailing Address:
P.O. Box 2965
Milwaukee, WI 53201-2965

*s/ Thomas M. Burnett*
Thomas M. Burnett
WI State Bar ID No. 1076010
tburnett@reinhartlaw.com
Danielle E. Marocchi
WI State Bar ID No. 1103023
dmarocchi@reinhartlaw.com

*Attorneys for Plaintiffs*

47935233